James Jackson, ex dem. Richard F. Nicoll, *vs.* Brown
and others.

Where a testator, by will made in 1778, devised lands to his *son* S. B. during his natural life, with remainder to the *first son* of his son S. B. for life, with remainder to the *first and every other son* and sons *of the eldest son of his son S. B.* successively, to hold the same in tail male ; and the *son* only was living at the death of the testator, and he unmarried, though he subsequently married and had a son, which son also married and had a son, so that there was a *son, grandson* and *great grandson* of the testator ; IT WAS HELD, that the son took a *life estate* in the premises that the limitation to the *grandson* was good, although he was unborn, at the death of the testator, but that the limitation over to the *great grandson* was void ; and such limitation being void, the *grandson*, instead of taking a *life estate* in the premises according to the terms of the devise, took an *estate in tail*, which, by the statute abolishing entails was converted into an *estate of inheritance in fee simple ;* and consequently that the *grandson* was entitled to maintain ejectment against his sisters, who had entered into possession of the premises by virtue of a devise to them, contained in the last will and testament of their father, the *son* of the first testator.

Where the disposition made by a testator of his property is contrary to the rules of law, as to the estates granted by him, courts, for the purpose of carrying into effect the general intent of the testator as far as possible, (*cy pres*) adopt that construction of the devise which will most nearly conform to the *general intent* of the testator, though in part it defeats his particular intent ; thus, in this case the particular intent was to give the grandson only a *life estate*, but inasmuch as the remainder over to the *great grandson* was void, the court, for the purpose of effecting the general intent of the testator, the continuing the estate in his descendants as long as the rules of law would permit, gave such a construction to the devise as to give a *life estate* to the *son*, and an *estate in tail* to the *grandson* of the testator.

THIS was an action of ejectment, tried at the Suffolk circuit in May, 1831, before the Hon. OGDEN EDWARDS, one of the circuit judges.

The plaintiff claimed the premises in question under the last will and testament of his grand-father William Nicoll, bearing date 19th August, 1778, and who died seized and possessed of the same in March, 1780. The clause of the will under which the plaintiff claims is in these words : "Item. I give and devise unto my said son *Samuel Benjamin Nicoll* all my lands, rights and hereditaments on West Neck and Sachem Neck, on Shelter Island, not hereinafter given to my

three daughters, for and during his natural life, without im-
peachment for waste, (with remainder to G. D. L. & W. H.
and their heirs, during the life of my said son Samuel Benja-
min, to preserve the contingent remainders hereinafter limit-
ed,) with remainder to *the first son of my said son Samuel
Benjamin* for life, (with remainder to the said trustees and
their heirs during the life of the said son of my said son Sam-
uel Benjamin, to preserve the contingent remainders herein-
after mentioned, to wit,) with remainder to the first and eve-
ry other son and sons of the eldest son of my said son Samu-
el Benjamin successively, according to their seniority, the el-
der to be preferred before the younger, to hold the same in
tail male." In case of the death of the *first son* of his son
Samuel Benjamin without issue, he gives the estate to the
*second son* of his son Samuel Benjamin for life, with a tail
to his issue male successively, and so to every son of his son
Samuel Benjamin, and the issue of such son successively,
with like devises to trustees, to preserve contingent remain-
ders. The will then proceeds as follow : " And in default of
the issue male of my said son Samuel Benjamin, I devise the
said remainder to the *first or eldest daughter* of my said son
Samuel Benjamin for life, without impeachment of waste,
(with remainder during the life of such first daughter to the
said trustees and their heirs in trust, to preserve the contin-
gent remainders hereinafter mentioned,) *with remainder to
the first and every other son* and sons of my said son's first
or eldest daughter successively, according to seniority, the
elder to be preferred before the younger, to hold the same in
tail male." In case of the death of the *first daughter* of
Samuel Benjamin without such issue, the testator gives the
estate to the *second daughter* of Samuel Benjamin, and the
issue male of of such daughter, and thus goes on from daugh-
ter to daughter, and their issue male successively ; *and in
default of issue male and female of his son Samuel Ben-
jamin* and their male issue, the testator gives the estate to
his own son, William Nicoll, for life ; and then, after ring-
ing the same changes of remainders through the sons of his
son William, he gives the estate, on failure of male issue of
William, to his own three daughters and their issues male,

&c. Then follows a clause in these words : " That my mean-
ing may be the better understood, and to give a key for the
more certain exposition of my will, I think proper to declare,
that after considering my estate and family, I think it will be
best not only to entail the estate, but to prevent the hasty
d ocking of such entail, and therefore it is my *general intent* to
continue the estate at *Islip* first in the male descendants of my
son *William*, (the testator having, by his will, *previous* to the
devise to his son *Samuel Benjamin*, as above stated, devised his
estate at *Islip* to his son William,) then in the male of his
daughters, and then in the male issue of my son Samuel Ben-
jamin, and then in the male issue of my own three daughters
in severalty, and upon failure of such male issue, then to their
issue female in severalty ; and that it shall not be in the pow-
er of any of my descendants before my great grand children
to cut off the entail.    And I think proper further to declare,
that the *same key* and exposition of my will which I have
above given relating to my estate at Islip, is meant by me to
extend, and shall be construed in every article, matter and
thing, to extend to my estate on *Shelter Island*, (*mutatis mu-
tandis*) as fully as if I had actually repeated and applied the
same key of my will to Shelter Island estate." *Samuel Ben-
jamin*, at the death of his father, entered and was possessed of
the premises by virtue of the devise ; he was then under six-
teen years of age, and unmarried ; he subsequently married,
and on the 15th September, 1785, his *first* or *eldest son, Rich-
ard F. Nicoll*, the lessor of the plaintiff in this cause, was
born.   On the 12th June, 1813, a son was born to Richard F.
Nicoll ; which son was the great grandson of William Nicoll,
the testator under whom the lessor of the plaintiff claimed.

On the part of the defendants, it was shown that, on the
6th December, 1827, *Samuel Benjamin Nicoll* (the father of
the lessor of the plaintiff) made his last will and testament,
and thereby devised *all his real estate* to three daughters, who
are the defendants in this cause, and were in possession of the
premises at the commencement of this suit. *Samuel Benja-
min Nicoll* died in possession of the premises in September,
1828.   It was also shown that, on the 14th October, 1830,
Richard F. Nicoll, the lessor of the plaintiff, executed an as-

signment, as an insolvent debtor, of all his estate, real and personal, to one *J. C. Albertson*, in trust for his creditors ; the action in this case having been commenced in 1829.

The above facts were found by a special verdict. The cause was submitted, on elaborate written arguments, by

*G. Miller*, for the plaintiff, and

*S. A. Talcott*, for the defendant.

*By the court*, SAVAGE, Ch. J. The counsel for the plaintiff makes three general points : 1. That *Richard F. Nicoll*, the lessor, took an estate for life by express limitation under the will of his grand-father ; 2. That the lessor, the *first son* of Samuel Benjamin and the *grandson* of the testator, to effect the plain and manifest general intent of the testator, took an estate in *tail male*, under the will of his grand-father ; 3. That the lessor took an estate in tail male by implication.

The leading point of the defence is, that *Samuel Benjamin Nicoll* took an estate tail by implication, which was converted by our statute into an estate in fee simple ; and that the premises in question, therefore, passed to the defendants as residuary devisees under the will of their father, Samuel Benjamin Nicoll.

It is an established principle, in the decission of questions arising under wills, that the intention of the testator shall be effectuated, in so far as such intention is consistent with the rules of law. It is a principle of law, that perpetuities shall not be permitted to exist—real estates shall not be so conveyed or devised as to be inalienable beyond a certain period, because such perpetuities tend to the inconvenience and prejudice of commerce and of society. In *Long* v. *Blackall*, 7 *T. R.* 102, Lord Kenyon says that the rules respecting executory devises and common law conveyances are similar, and cannot be rendered inalienable by the former longer than by the latter ; that in marriage settlements, the estate may be limited to the first and other sons in tail ; and until the person to whom the last remainder is limited shall be of age, the estate is inalienable. The courts have allowed executory devises to

extend as far, He adds, "It is an established rule, that an executory devise is good if it must necessarily happen within a life or lives in being and twenty-one years, and the fraction of another year, allowing for the time of gestation." Where perpetuities have been attempted by means of estates tail, they have been defected by fines and common recoveries; but where an attempt is made to perpetuate an estate by means of executory devises, neither fine nor common recovery can bar such an estate. An executory devise cannot be barred by fine, because the title of the executory devisee is not through, or as privy to the first taker, but quite independent of him; it cannot be barred by common recovery, because the recompense, which in supposition of law is the ground of barring the issue in tail and those in reversion and remainder, does not extend to an executory devise. Hence it became necessary for the courts to prescribe limits to this new species of settlement; and it has been established as a rule, both in law and equity, that such estates shall not be rendered inalienable for a longer period than that above mentioned; that being in analogy to the case of strict entails, which cannot be protected from fines and recoveries longer than the life of the tenant for life in possession, and the attainment of twenty-one by the first issue in tail, to which are added, in executory devises, a few months for the case of a posthumous child. *Fearne*, 444, *n. Hargrave's Law Tracts*, 518. It follows that an executory devise cannot be limited upon an indefinite failure of issue.

By means of an executory devise, an estate may be devised to any number of persons for life successively, if *in esse* at the death of the testator—to infants *in ventre sa mere*, and to persons unborn. Such is the law in England, and such it is here, with the exception that, by our revised statutes, 1 *R. S.* 723, § 15, 16, 17, successive estates for life shall not be limited to more than two persons in being at the creation thereof; and if limited to more than two, all the life estates subsequent to the two first entitled shall be void. That an estate for life may be limited to an unborn infant, has been decided in a case arising under the identical will upon which this case de-

NEW YORK, pends. *3 Johns. Cas.* 18. It seems to have been doubted
May, 1835. formerly whether a limitation for life to an unborn person was
Jackson      good; but it is now well settled that it is, and also that an
v.           estate limited to the issue of such unborn person to take as
Brown.       purchasers would be void, being a possibility upon a possibili-
ty, or, as Mr. Justice Wilmot expresses it in *Chapman* v. *Brown,*
*3 Burr.* 1635, "a nonentity upon a nonentity," which the law
will not admit. *4 Cruise,* 423.   *1 East,* 452.   *3 T. R.* 83.
*2 Fearne,* 502.   Thus, if an estate be limited in succession,
first to a person in being for life, and after his decease to his
unborn children, and afterwards to the children of such un-
born children, this last remainder is absolutely void, and there
is no carrying the estate to them but by comprising them in
the extent of the estate limited to their parents, namely, to
the unborn children of the person in being; that is, by giving
such unborn children of the person *in esse* an estate of inheri-
tance which is an estate tail. *Fearne,* 502.   The same prin-
ciple prevails in marriage settlements; for though an unborn
child may take an estate for life as well as an estate tail, yet
such estate would not descend to the issue of such child;
and no estate limited to such issue as purchasers would be
good.   *Fearne,* 503, *and cases there cited.*

In the case of *Chapman* v. *Brown,* 3 *Burr.* 1626, one Josh-
ua Brown, by will, devised certain premises, first to his wife
for life; then to his brother Thomas until the eldest son of
another brother, Reginald Brown, should attain the age of 24;
then to such eldest son, whose name was William, for his life;
then to the first son of William, and the heirs male of his body;
and for want of such issue, the second, third, and every other
son of William and their heirs male; and for want of such issue
of William, then to the second son of Reginald Brown for life,
and to the first son of the body of such second son and his
heirs male, &c.   He continues the divises further in the fam-
ilies of his other brothers, and declares his intention to be, to
have the estate continue in his name and blood so long as it
shall please God to permit the same.   The several estates
were enjoyed by the widow; by Thomas, the father of Wil-
liam; and by William, the nephew of the testator.   After the
testator's death, his brother Reginald had a son born, which

was his second son, whose name was Thomas. William di-
ed leaving issue a daughter; upon his death, Thomas, the
second son of Reginald, entered and suffered a common re-
covery. He devised to the defendant. The lessor of the
plaintiff was the heir at law of William, and also of the testa-
tor. The question was, whether Thomas, the second son of
Reginald (which Thomas was not born till after the death of
the testator) took an estate tail under the will, or only an es-
tate for life. The court held that Thomas, the second son of
Reginald, as the will stood, took an estate tail; an estate for
life was devised to him, then to the first son of his body and
his heirs male. The court laid down the proposition that the
unborn son of an unborn son could not take, and that to
effectuate the general intent of the testator, the word son
should be construed a word of limitation, and an estate tail
given to the second son of Reginald. Lord Mansfield said,
that for the purpose of attaining the intent, words of limita-
tion shall operate as words of purchase; implications shall sup-
ply verbal omissions; the letter shall give way; every inac-
curacy of grammar, every impropriety of terms, shall be cor-
rected by the general meaning, if that be clear and manifest.
Mr. Justice Wilmot said, the question is, what this testator
intended, and whether we can give it effect in part. At the
time of the testator's death, William, the first son of Reginald,
was born; Thomas, the second, was not born. He certainly
meant the same estate to Thomas as to William; but that inten-
tion cannot take effect, according to the rules of law; you can-
not limit a nonentity upon a nonentity—a possibility upon a
possibility. It was necessary that the second son of Reginald
should be tenant in tail, in order to give the intention of the
testator effect. If the devise to the son of Reginald's second
son should be a nullity, the general heirs at law of the tes-
tator would take, though never so many heirs male from Re-
ginald should be living. Let his intention, therefore, take
place as far as it can go, but no farther. He also adds, that
words in a will are to be construed words of limitation or of
purchase, as they will best effectuate the intention of the tes-
tator. The divise was held to convey an estate tail. This
decision was affirmed by the house of lords. This case has

been relied on by the counsel for both parties now before the court. As I understand it, it is an authority for the plaintiff. It proves that the unborn son of an unborn son cannot take as a purchaser, but only as heir : and therefore, to effectuate the general intent of the testator, to wit, to continue the estate in the family as long as possible, an estate tail must be given to the immediate ancestor of such unborn son of an unborn son, who in that case was the second son of Reginald Brown. In the case now under consideration, the lessor of the plaintiff was the son of Samuel Benjamin, the first devisee, for life. He, Samuel Benjamin, was living at his father's death ; the devise to him for life was good ; the devise to the lessor being the unborn son of a person in being at the testator's death, was also good ; but the unborn son of the lessor cannot take as a purchaser ; as to him, therefore, the word *son* must be construed a word of limitation, and not of purchase, which gives to his father, the lessor, an estate tail. The testator has declared his general intent to be, to continue the estate in his family, so that the entail could not be docked until the estate came to his great grandson. In the language of Mr. Justice Wilmot : "Let his intention, therefore, take place as far as it can go, but it can go no farther." *Humberston* v. *Humberston*, *P. Wms.* 332, was similar in principle. Humberston, the testator, devised his estate to the Draper's Company, in trust to convey the premises to his godson, Matthew Humberston, for life ; and after his death, to his first son for life ; and so on to about fifty first sons, without making any disposition of the fee. Lord Chancellor Cowper said, that though an attempt to make a perpetuity for successive heirs be vain, yet, so far as is consistent with the rules of law, it ought to be complied with ; and therefore let all the sons of these several Humberstons that are already born take estates for their lives ; but when the limitation is to the first son unborn, then the limitation to such unborn son shall be in tail male. An application of this case to the case now before us will produce this result—the life estate to Samuel Benjamin, he being born before the death of the testator, was good as an estate for life ; but when the limitation is to the first unborn son, (the lessor,) such limitation shall be in tail male ;

and having an estate tail, our statute gave him an estate in

fee simple. It cannot be necessary to cite more cases, although there are many more in books ; but I will refer to a learned note of Mr. Butler, to page 203, of the 8th ed. of *Fearne,* for a full explanation of the doctrine of approximation, or as it is called the *cy pres* doctrine, which the courts in their construction of wills have long adopted, and in some instances carried very far. It has been adopted in cases where the testator clearly intended to give estates which were contrary to the rules of law ; and in construing such devises, the courts primary object was to give effect to the general intent of the testator, which was, that the issue of the devisee should take the land, and that the mode in which the issue should take, was his secondary object, or his particular intent. In order, therefore, to effect the testator's intent as far as possible, (*cy pres,*) the courts adopt that construction of the devise, which, by including the issue of the devisee, satisfied the testator's general intent, that the issue should take ; but which in part defeated his particular intent, by giving to his issue estates different from those intended by the testator.

Perhaps it might have been sufficient, for the decision of this case, to have relied upon the case of *Stedfast* v. *Nicoll*, 3 *Johns. Cas.* 18, which arose upon the devise to the testator's eldest son, *William,* who had two sons, William and Henry. Upon the death of the testator, William the son entered and died ; upon his death, William the grandson entered. He died, leaving his wife *enseint* with a son ; but as there was no son of William at his death, his brother Henry (who by the will was entitled in default of issue male of William) entered, and was defendant in that suit. It was held that the posthumous son of William should take in the same manner as though he had been born in his father's lifetime. Whether such posthumous son could take in that case, was the principal question before the court ; but the general validity of the devise was not questioned. Kent, justice, says that the posthumous son of the grandson, if he takes at all, must take as a purchaser ; that the son and grandson took only estates for life : they were both living at the death of the testator ; and the court, in that case, declared that the unborn great grand-

son should also take as a purchaser in tail male. The posthumous son in that case was considered as *in esse*, and as as if he had been born in the lifetime of his father. He was one degree farther removed from the testator; but in so far as the nature of the estate which he took is concerned, he occupied the same place as the lessor in this case. His father was living in the life of the testator; he was therefore the first unborn son of a tenant for life who was living before the death of the testator, and the court said he was tenant in tail: he took as if he had been born at his father's death. So also, in accordance with the cases which I have cited, the lessor being the first unborn son of a tenant for life, who was living at the death of the testator, he should take an estate tail.

The defendants' counsel concedes several of the positions above assumed. He admits that a devise to unborn children of unborn children is void; that the first estate of inheritance limited by the will being void, the lands cannot descend in the manner intended by the testator in tail male, without enlarging one of the previous estates for life, and converting it into an estate tail male; that the rules of law require this to be done to carry into effect the general intent of the testator, although at the expense of defeating the particular intent; and that this may be accomplished, by giving an estate in tail male to *Samuel Benjamin*, or by giving him an estate for life, with remainder to his sons in tail male in succession; and he insists that the intention of the testator will be best promoted by raising an estate tail in *Samuel Benjamin*. He relies upon the language of the devise over to the eldest daughter of Samuel Benjamin, in default of issue male. It is as follows: "*And in default of the issue male of my said son* Samuel Benjamin, I devise the said remainder to the first or eldest daughter of my said son Samuel Benjamin for life," &c. This, it is insisted, means an indefinite failure of issue; that the word *issue* is used as the designation of a *class of heirs* who take in unlimited succession, and not as a *designatio personarum* referring to particular individuals. It is also contended, that the expression *such issue* in the clause, limiting the estate over to the son of the son of Samuel Benjamin is a *designatio personæ*, and not *nomen collectivum*, and that therefore an estate

tail cannot be properly raised upon that limitation, but upon that, devising the estate to the daughters upon the failure of male issue. I do not think it necessary to go at large into the abstruse learning upon these peculiar expressions, contenting myself with following the general principles applicable to the construction of wills, viz. first ascertain the general intent of the testator, and then carry that intent into effect as far as the rules of law will permit. There cannot be a doubt that the word *son*, as used in the will before us, is to be considered as a word of purchase, a *designatio personæ ; and the words issue*, or such *issue*, refer to the son or sons previously mentioned, and not to heirs as a class. Such is the plain intent of the testator ; and whatever may be the strict gramatical construction, we are bound, in the language of Lord Mansfield, to give such construction, that " every inaccuracy of grammar, every impropriety of terms, shall be corrected by the general meaning, if that be clear and manifest." *See Rogers* v. *Rogers* 3 *Wendell*, 503. By raising the estate tail in Samuel Benjamin, we should defeat the general intent of the testator, to wit, that of continuing the estate in his descendants as long as the rules of law will permit. If the will gave Samuel Benjamin an estate tail, our statute converted it into an estate in fee simple ; but if Samuel Benjamin took only an estate for life, then the perpetuity is carried one degree farther in the family of the testator. If the law will permit that to be done, then it is the duty of the court to do it, as more nearly effecting the intention of the testator. The will in question is drawn much like those in the cases above alluded to, particularly *Chapman* v. *Brown;* but neither in that case nor in the others was such a question agitated.

It is not necessary to find in the will words conveying the idea of an indefinite failure of issue, in order to defeat the perpetuity by raising an estate tail ; an estate in fee is given by implication of law to prevent a perpetuity. The plain and declared intent of the testator was, to give life estates only to his own son Samuel Benjamin, to Samuel Benjamin's sons and his grandsons in succession. The sons were intended to take as purchasers, and not as heirs. The word *issue* clearly related to the word *sons*. There is, therefore, no ground for

NEW YORK, construing the failure of sons to mean an indefinite failure
May, 1835. of issue. The testator intended that the lessor should take
The People as purchaser, and not as heir. This intention is consistent
v. with the rules of law, and should be carried into effect. It
Ten Eyck. was also the testator's intention that the lessor should take an
estate for life only. That intention is contrary to the rules
of law, as tending to a perpetuity; that intention the court
cannot effectuate. But to execute the general intent as far
as possible, the lessor must take an estate of inheritance—a
fee simple. He is therefore entitled to judgment.